**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1788-20

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

YONIS A. SANTA-MELLA, JR.

    Defendant-Appellant.

_____

Argued May 25, 2022 – Decided June 28, 2022

Before Judges Whipple, Geiger and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 19-09-0758.

Austin J. Howard, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Austin J. Howard, of counsel and on the briefs).

John McNamara, Jr., Chief Assistant Prosecutor, argued the cause for respondent (Robert J. Carroll, Morris County Prosecutor, attorney; John McNamara, Jr., on the brief).

PER CURIAM

Defendant Yonis A. Santa-Mella, Jr. appeals from the denial of his motion to suppress physical evidence seized during a warrantless roadside search from the center console and trunk of the car he was driving, and his subsequent statement to police as fruit of the poisonous tree. We affirm, but for reasons different than those expressed by the trial court as to the search of the trunk.[1]

We take the following facts from the testimony at the suppression hearing. On March 12, 2019, Officer Keith Donnelly of the Montville Township Police Department was on patrol in a marked police car on Route 46 East. He observed a silver sedan slow down on Route 46 East, causing traffic in the left lane to slow down as well. The sedan then pulled onto and illegally crossed the grass median and proceeded west on Route 46, almost causing an accident. Donnelly activated his emergency lights and followed the sedan across the median and into the westbound lane. After crossing the median, Donnelly turned off his emergency lights, closed the distance to the sedan, and observed it change lanes without signaling. The sedan then pulled into a parking lot. Donnelly

---

[1] See State v. Heisler, 422 N.J. Super. 399, 416 (App. Div. 2011) (stating that an appellate court is "free to affirm the trial court's decision on grounds different from those relied upon by the trial court").

reactivated his emergency lights, followed the vehicle into the parking lot, and made a traffic stop.

Donnelly advised dispatch of the traffic stop. Backup Officers Robert Jeannette and Jason Blustein arrived "at least" five minutes later. In the interim, Donnelly exited his patrol vehicle to speak to the driver of the sedan, later identified as defendant. He asked defendant, the sole occupant, for his license and registration. Defendant produced his license and the registration, but the insurance card he gave Donnelly was expired and bore a third-party's name.

Donnelly described defendant's demeanor as "very excited, but – nervous. His breathing was labored. His hands were shaking uncontrollably. His chest was pulsating." When Donnelly told defendant that the insurance card was expired, defendant opened the glove box to find a different one. Donnelly testified that defendant's hands were shaking as he did so.

Defendant then searched through the center console, which he "shut very quickly." Donnelly "observed a plastic [b]aggie containing a powdery substance on top of a stack of money." He "believed" the plastic bag contained "some type of narcotic." Donnelly described the suspected narcotic as "a grayish rock and powdery substance." Although defendant turned while searching through the center console, Donnelly could still see defendant's hands and the console.

A-1788-20

Donnelly observed air fresheners and a rubber band that resembled the kind used to package drugs inside the car. He also noticed there was a single key in the ignition. Donnelly testified he had been a police officer since 2003, had participated in 300 to 400 narcotics arrests, and had training on narcotics packaging. Based on Donnelly's training and experience, "a single key in the ignition indicates a work car, solely used to transport . . . narcotics." Defendant was unable to produce a valid insurance card.

Donnelly then asked defendant about his day. Defendant said that he was visiting a friend around the Paterson area, stopped to get gas, and was on his way back to his home in Pennsylvania. Donnelly noticed several inconsistencies in defendant's statements. At first, defendant said he was visiting a friend, then changed it to his cousin, then said he was visiting his aunt. Defendant did not know where in Paterson the house that he visited was located. In addition, defendant first said the car was his friend's, and then later said the car was his friend's mom's car.

Donnelly ordered defendant out of the car and was speaking to him outside when Officers Jeannette and Blustein arrived. Donnelly told Jeannette that he was going to search the car but did not relate everything that defendant said: Jeannette was there to back Donnelly up and watch defendant while Donnelly

A-1788-20

searched the car. Donnelly testified that his reason for searching the car was "probably . . . that the story I was given just didn't make any sense."

Donnelly provided the following sequence of the search of the car. He first opened and searched the driver's side door, then searched around the driver's seat and center console. In the center console, he found the plastic bag "that contained [the] narcotic" he had seen earlier. A stack of $460 in cash was on the bag. Donnelly then searched the remainder of the car's interior and "worked [his] way to the trunk[.]"

In the trunk, Donnelly found a brown bag with a plastic bag inside it. The plastic bag contained four cardboard trays. Each tray had ten bricks of heroin, for a total of forty bricks. The decks had rubber bands on them like the one Donnelly saw in the interior. There was nothing else in the trunk. Donnelley placed defendant under arrest immediately after locating the bricks in the trunk. He stated that he would have arrested defendant even if they had not found the heroin in the trunk. While being arrested, defendant claimed he did not know anything about the heroin in the trunk.

The search of the interior and trunk was warrantless. Donnelly did not testify that the car would have been impounded if he had not searched the trunk.

A-1788-20

Donnelly's patrol vehicle did not have a mobile video recorder (MVR). The two other responding patrol vehicles had MVRs. Video from their MVRs was played at the suppression hearing.

Video from Jeannette's patrol vehicle depicts defendant standing outside of his car when the other officers arrive. Donnelly advised Jeannette that

> Yonis drove all the way from Pennsylvania down to Paterson area to hang out with his cousin, but he doesn't, he doesn't know if it's really Paterson for just a little bit and then comes back, cross over the median over here but I'm gonna check his car real quick make sure he's got nothing illegal.

Donnelly does not advise the other officers about the drugs that he saw in the center console. The video captured the search of the vehicle and arrest and is consistent with Donnelly's version. The other officers agreed to call for an impound after they arrested defendant.

Defendant was read his Miranda[2] rights at the Montville Police Station by Detective Eric Brauchle. Defendant indicated that he wanted a lawyer present, and Brauchle concluded the interview. Brauchle restarted the interview approximately twenty minutes later because defendant wanted to come back and speak to him. After Brauchle readvised defendant of his Miranda rights,

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

A-1788-20

defendant admitted to making an illegal U-turn, and that he is occasionally hired by someone named Anthony to sell heroin for $160 per brick.[3]

A Morris County Grand Jury returned an indictment charging defendant with third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1) (count one), and second-degree possession of CDS, with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and (b)(2) (count two). Defendant was also charged with fourth-degree possession of drug paraphernalia with intent to distribute, N.J.S.A. 2C:36-3, and motor vehicle violations.

Defendant filed a motion to suppress the CDS seized from his car and his subsequent statement to police as fruit of an unconstitutional warrantless search. The trial court conducted a suppression hearing and heard oral argument on February 20, 2020. Donnelly was the only witness that testified.

The court issued an oral decision and order denying the motion. The court found Donnelly's testimony about the traffic stop "credible in all respects." The court determined that Donnelly had articulable and reasonable suspicions of motor vehicle violations justifying the traffic stop—for improperly crossing over the grass median and driving carelessly, almost causing an accident.

---

[3] Although defendant appears to be crying during the interrogation, he does not argue on appeal that his Miranda rights were violated or that his statement was coerced or otherwise involuntary.

Next, the court found that Donnelly was credible regarding the initial search of the car, including the center console. The court found Donnelly's testimony to be "forthright and candid." He answered questions "very directly without any hesitation" and was not evasive or argumentative. His testimony did not appear to be rehearsed. The court noted that Donnelly "readily admitted that . . . what he said to his fellow officer or officers was not a full report." The court did not find that unusual or suspicious.

Based on Donnelly's credible testimony, the court found the State proved by a preponderance of the evidence that "there was probable cause to search the passenger compartment of the vehicle pursuant to the automobile exception announced in [State v. Witt, 223 N.J. 409 (2015)]." The court noted that an officer making a motor vehicle stop has "a significant motivation to keep his eyes on the defendant." The court concluded that Donnelly's combined observations of defendant's demeanor, his inconsistent statements, the air fresheners, the rubber band, and what he saw in the center console constituted probable cause to search the passenger compartment of the car under the automobile exception.

The court found the automobile exception to the warrant requirement did not extend to the trunk. Instead, the court found sua sponte that the search of

8

the trunk was permissible under the inevitable discovery doctrine. It determined that the State showed by clear and convincing evidence all three elements for inevitable discovery. First, that the proper procedure to complete the investigation would be to arrest defendant and impound his car, which the court found the police would have done. Second, that the Morris County Prosecutor's Office would have applied for a warrant to search the trunk of the car based on Donnelly's observations. Third, that the discovery would have happened independently of the discovery of the evidence by unlawful means.

The court explained that based on what Donnelly observed and the narcotics found in the center console, it "certainly would have had no hesitation signing that search warrant . . . assuming that . . . there would have been nothing in the affidavit in support of that warrant about the heroin in the trunk."

Based on that reasoning, the court denied the motion to suppress the CDS found in the car. In turn, because the search and seizure were constitutional, defendant's statement to police was not fruit of the poisonous tree.

On September 9, 2020, defendant pled guilty to second-degree possession of CDS with intent to distribute. In exchange for the plea, the State agreed to recommend a sentencing downgrade to the third-degree range, a three-year term, and dismissal of the remaining charges. The court accepted the plea, finding it

was entered knowingly, intelligently, and voluntarily, and was supported by an adequate factual basis.

Defendant was sentenced on January 22, 2021. The court found aggravating factors three (risk of reoffending), six (prior criminal record), and nine (need for deterrence). N.J.S.A. 2C:44-1(a)(3), (6), and (9). The court found no mitigating factors and that the aggravating factors outweighed the non-existent mitigating factors. The court sentenced defendant in accordance with the plea agreement to a three-year term. Appropriate fines, penalties, and assessments were also imposed. Count one and the other charges, including the motor vehicle offenses, were dismissed. This appeal followed.

On appeal, defendant argues:

> THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE [SEIZED] FROM THE CAR HE WAS OPERATING, IN VIOLATION OF HIS FEDERAL AND STATE RIGHTS TO BE FREE FROM UNREASONABLE SEARCHES.
>
> > A. The Police Lacked Probable Cause to Search the Vehicle Under the Automobile Exception.
> >
> > > 1. The Trial Court's Finding that the Arresting Officer Saw Suspected Contraband in Plain View Was Clearly Mistaken Because His Account Is Contradicted by Objective Video Evidence and Common Sense.

10

2. Excluding the Arresting Officer's Incredible Testimony, Police lacked Probable Cause to Search Any Part of the Vehicle.

3. Even if this Court Credits the Arresting Officer's Testimony, the Trial Court Correctly Held that Police Did Not Have Probable Cause to Search the Trunk Under the Automobile Exception.

B. The Trial Court Erred in Applying the Inevitable Discovery Doctrine to Justify the Search of the Trunk.

1. The State Failed to Prove by Clear and Convincing Evidence that Police Would Have Inevitably Impounded a Car Not Registered to Defendant over a Small Amount of Suspected Narcotics.

2. The Trial Court's Application of the Inevitable Discovery Doctrine Created a Circular Loophole to the Warrant Requirement Because It Excused the Police's Failure to Obtain a Warrant by Presupposing Police Would Have Obtained a Warrant.

We are guided by the following well-established legal principles. "Appellate courts reviewing a grant or denial of a motion to suppress must defer to the factual findings of the trial court so long as those findings are supported by sufficient evidence in the record." State v. Hubbard, 222 N.J. 249, 262

11

(2015); see also State v. Nelson, 237 N.J. 540, 551 (2019) (same).  "We defer to those findings of fact because they 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'"  Hubbard, 222 N.J. at 262 (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).  The availability of videotape of the encounter between the police and a defendant does not diminish the deference due to a trial court's findings.  State v. Elders, 192 N.J. 224, 244-45 (2007).  Deference is still appropriate, even when video is the sole evidence available, because this "best advances the interests of justice in a judicial system that assigns different roles to trial courts and appellate courts." State v. S.S., 229 N.J. 360, 379 (2017).

In evaluating a trial judge's ruling on a suppression motion, we afford considerable deference to the judge's role as a factfinder.  Our review of the judge's factual findings is "exceedingly narrow."  State v. Locurto, 157 N.J. 463, 470 (1999).  We must defer to those factual findings "so long as those findings are supported by sufficient evidence in the record."

"An appellate court should not disturb the trial court's findings merely because 'it might have reached a different conclusion were it the trial tribunal' or because 'the trial court decided all evidence or inference conflicts in favor of

one side' in a close case." Nelson, 237 N.J. at 551 (quoting Elders, 192 N.J. at 244). "The governing principle, then, is that '[a] trial court's findings should be disturbed only if they are so clearly mistaken that the interests of justice demand intervention and correction.'" Id. at 552 (alteration in original) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)).

By contrast, the trial court's interpretation of the law and the legal "consequences that flow from established facts" are reviewed de novo. State v. Gamble, 218 N.J. 412, 425 (2014); accord State v. Smith, 212 N.J. 365, 387 (2012).

The Motor Vehicle Stop

A motor vehicle stop is lawful when based on reasonable and articulable suspicion that a traffic or a criminal offense has been or is being committed. Delaware v. Prouse, 440 U.S. 648, 663 (1979); State v. Amelio, 197 N.J. 207, 211 (2008); State v. Carty, 170 N.J. 632, 639-40 (2002). The State has the burden to prove by a preponderance of the evidence that such suspicion was present. Amelio, 197 N.J. at 211.

To determine whether reasonable suspicion existed, a court must consider the totality of the circumstances, viewing the "whole picture" rather than taking each fact in isolation. Nelson, 237 N.J. at 554-55. This analysis may also

consider police officers' "background and training," including their ability to "make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'"  Id. at 555 (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)).

The trial court found Donnelly had a reasonable and articulable suspicion of motor vehicle violations justifying the traffic stop based on defendant's crossing over the grass median and driving carelessly, almost causing an accident.  The record supports that finding.  Defendant does not challenge the constitutionality of the motor vehicle stop.

The Warrantless Search of the Passenger Compartment of the Vehicle

The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution protect against unreasonable searches and seizures.  State v. Nyema, 249 N.J. 509, 527 (2022).  "Under both Constitutions, 'searches and seizures conducted without warrants issued upon probable cause are presumptively unreasonable and therefore invalid.'"  Ibid. (quoting Elders, 192 N.J. at 246).  The state bears the burden of proof by a preponderance of the evidence that the warrantless search or seizure "[falls] within one of the few well-delineated exceptions to the warrant requirement."  Ibid. (quoting Elders, 192 N.J. at 246).

One of the recognized exceptions to the warrant requirement is the automobile exception, which "authorizes a police officer to conduct a warrantless search of a motor vehicle if it is 'readily mobile' and the officer has 'probable cause' to believe that the vehicle contains contraband or evidence of an offense." Witt, 223 N.J. at 422 (quoting Pa. v. Labron, 518 U.S. 938, 940 (1996)). In addition, the stop must be spontaneous and unforeseeable. Id. at 446-48; accord State v. Rodriguez, 459 N.J. Super. 13, 22 (App. Div. 2019) (citing Witt, 223 N.J. at 447-48). If the stop meets these criteria, law enforcement has the authority to search the vehicle at the scene without a warrant. Witt, 223 N.J. at 447-49. On the other hand, if police have probable cause that the vehicle contains evidence of a crime, but the stop was not spontaneous or foreseeable, the police department can tow and impound the car, secure a search warrant, and then search the vehicle. Id. at 448-49.

The standard for probable cause is identical under both the Fourth Amendment of the Federal Constitution and Article I, Paragraph 7 of the New Jersey Constitution. State v. Novembrino, 105 N.J. 95, 122 (1987) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). Probable cause exists where, given the totality of the circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place." State v. Moore, 181

A-1788-20

N.J. 40, 46 (2004) (quoting Gates, 462 U.S. at 238).  The central component of probable cause "is a well-grounded suspicion that a crime has been or is being committed."  State v. Nishina, 175 N.J. 502, 515 (2003) (quoting State v. Sullivan, 169 N.J. 204, 211 (2001)).

The trial court found that Donnelly's combined observations of defendant's demeanor, the air fresheners, the rubber band, and what he saw in the center console constituted probable cause to search the passenger compartment of the car under the automobile exception.  Defendant challenges this ruling.

First, defendant argues the court erred in finding Donnelly's testimony credible when he explained that he saw narcotics in plain view of defendant's car's center console.  Defendant contends the MVR tapes contradict Donnelly's version of the search.  Defendant also argues that Donnelly did not mention seeing the drugs in the center console to the other officers, and in conducting his search of the car did not immediately go for the drugs but inspected the driver's side door and other locations before searching the console.  Defendant further argues that Donnelly fabricated his testimony about seeing the drugs in the center console in the first place, because he could not have seen it while standing outside the car with defendant's body blocking his view.  Defendant

asserts that without Donnelly's testimony, the officers lacked probable cause to search any part of the car. We are unpersuaded by these contentions.

The trial court made detailed credibility findings. We defer to those findings and discern no basis to overturn them as they are supported by sufficient evidence in the record. The fact that Donnelly did not advise the backup officers about seeing the bag in the console is not controlling. Nor is the fact that Donnelly first searched the door, which was closer to him than the center console. Donnelly saw the bag containing the suspected narcotics when defendant was looking for an unexpired insurance card. With his back to Donnelly as he searched for the card, defendant could not reliably determine if Donnelly's line of sight to the center console was obstructed.

We thus discern no factual or legal basis to overturn the trial court's finding that Donnelly had probable cause to search the passenger compartment of the car. By any measure the motor vehicle stop was spontaneous and unforeseeable. Therefore, the warrantless search of the passenger compartment and seizure of the contraband was permissible under the automobile exception.

The Search of the Trunk

The court found the automobile exception to the warrant requirement did not extend to the trunk, but the search of the trunk was permissible under the

inevitable discovery doctrine because all three elements of the doctrine were satisfied. It is here that we part company with the trial court's reasoning.

Defendant argues that the police did not establish that they would have impounded his car had they not found the heroin in the trunk. We agree. Indeed, during oral argument before this court, the State acknowledged that the testimony at the suppression hearing did not satisfy that element.

That determination does not end our inquiry, however. We disagree with the trial court's finding that facts and circumstances did not provide probable cause to search the truck under the automobile exception.[4] Accordingly, justification to search the trunk under the inevitable discovery doctrine was not necessary.

Donnelly observed a single key in the ignition, a rubber band of the type frequently used to bundle heroin, and air fresheners inside the passenger compartment. Coupled with defendant's inconsistent statements, excited demeanor, and highly visible nervousness, Donnelly was put on alert based on his training and experience. When defendant opened the center console,

---

[4] We are not bound by the trial court's legal conclusions and are free to affirm the trial court's decision for reasons other that the trial court articulated, as appeals are taken from rulings, not the reasons expressed for those rulings. N.J. Div. of Child Prot. & Permanency v. K.M., 444 N.J. Super. 325, 333-34 (App. Div. 2016).

Donnelly observed a bag containing a substantial amount of suspected narcotics and a large sum of cash. These combined circumstances, given Donnelly's training and experience, led him to reasonably believe defendant was engaged in drug distribution activities, and not just possession of a small amount of CDS for personal use.

Donnelly's observations were not limited to intrinsically innocent objects and defendant's conduct went beyond innocent behavior. Donnelly observed criminal behavior. The totality of the circumstances provided probable cause to perform a roadside warrantless search of the entire car, including the trunk, under the automobile exception. See Rodriguez, 459 N.J. Super. at 23 (citing Witt, 223 N.J. at 449) (explaining that "[n]othing in Witt states that a roadside search of a vehicle based upon probable cause cannot be performed if the vehicle is going to be impounded. We instead read Witt as affording police officers at the scene the discretion to choose between searching the vehicle immediately if they spontaneously have probable cause to do so, or to have the vehicle removed and impounded and seek a search warrant later."). Accordingly, the search of the trunk was constitutionally permissible. Donnelly was not required to obtain a telephonic search warrant or to impound the vehicle and obtain a warrant before searching it. Ibid. For these reasons, there was no basis to suppress the

narcotics seized from the trunk or defendant's statements to the police as fruit of the poisonous tree.

Defendant's reliance on State v. Demeter, 124 N.J. 374 (1991) and State v. Patino, 83 N.J. 1 (1980), is misplaced. The controlling facts in those cases are materially different.

In Demeter, the officer made a traffic stop and observed a black opaque 35-millimeter film container lying on the storage area of the van's front console. 124 N.J. at 378. The officer did not see a camera in the van. Ibid. The officer removed, opened, and searched the film container. He detected an odor of marijuana and found some residue inside the container. Ibid. The officer then searched the vehicle and discovered another film container containing narcotics. Ibid. Noting that the film container appeared intrinsically innocent and that the contents of the container were not visible to the officer, the Court held that despite the officer's training and experience that film containers were commonly used to contain narcotics, the police lacked probable cause to believe that either the car or the container held drugs. Id. at 383. Here, unlike in Demeter, Donnelly observed the bag containing suspected narcotics and large amount of cash in plain view when defendant opened the center console.

In Patino, the Court held that "[a] small amount of marijuana does not alone without other circumstances that suggest participation in drug traffic or possession of more contraband provide justification to extend the zone of the exigent search further than the persons of the occupants or the interior of the car." 83 N.J. at 14-15. The Court explained that "the bare circumstance of a small amount of marijuana does not constitute a self-evident proposition that more marijuana or other contraband might be elsewhere in the automobile." Id. at 12. Here, unlike in Patino, the contraband observed in plain view was not limited to a small amount of marijuana consistent with personal use. Moreover, the other circumstances we have discussed were part of the totality of the circumstances providing probable cause to expand the search into the trunk.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21