**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0875-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOSE M. ARIAS-MADE,

     Defendant-Appellant.

_____

Argued July 19, 2022 – Decided August 12, 2022

Before Judges Sabatino, Gilson and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 17-10-1417.

Kevin S. Finckenaur, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Kevin S. Finckenaur, of counsel and on the briefs).

Ian C. Kennedy, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorney; Ian C. Kennedy, of counsel and on the brief).

PER CURIAM

Defendant appeals from his jury trial conviction for possession of a handgun without a permit, N.J.S.A. 2C:39-5(b). Police found the gun in the trunk of his car following a motor vehicle stop for an alleged tinted windows violation. After carefully reviewing the record in light of the arguments of the parties and governing legal principles, we reverse and vacate defendant's conviction because the State at the suppression hearing failed to meet its burden to establish reasonable and articulable suspicion to justify the motor vehicle stop.

I.

We discern the facts pertinent to this appeal from the evidence presented by the State at the suppression hearing. See State v. Gibson, 318 N.J. Super. 1, 9 (App. Div. 1999) ("We take this opportunity to remind the parties that on appeal 'we may only consider whether the motion to suppress was properly decided based on the evidence presented at that time.'" (quoting State v. Jordan, 115 N.J. Super. 73, 76 (App. Div. 1971))).

On May 27, 2017, at approximately 4:15 a.m., Englewood Cliffs Police Officer Kyle Ust initiated a motor vehicle stop of defendant's car. The encounter was recorded by the officer's mobile video recorder (MVR), and the dashcam

recording was played at the suppression hearing.[1] Ust testified that he "observed a red Audi four door sedan with excessive tinted windows on all four windows." Ust pulled out onto the roadway, followed defendant's vehicle for a brief time, and initiated a motor vehicle stop. Ust did not observe any motor vehicle violations other than the suspected tinted windows infraction.

Two other officers responded to the scene. Ust approached the detained vehicle from the passenger side and instructed defendant, the sole occupant, to roll down the passenger side front window. Ust "immediately detected a strong odor of marijuana." He also observed two cut straws and white powder in the backseat.

When Ust mentioned that he smelled marijuana, defendant replied that he had been smoking it earlier in the day. Ust ordered defendant out of the car and proceeded to ask him questions about his itinerary.

Ust testified that he told defendant he had been stopped for tinted windows and asked defendant, "are you aware that tinted safety glass in the State of New Jersey is illegal?" Defendant acknowledged that "he did understand that." During the questioning, Ust asked defendant if he could "check him for

---

[1]  We have been furnished with the video and have reviewed it as part of our consideration of the appeal.

A-0875-19

weapons." Defendant replied "yeah," whereupon Ust conducted a pat down frisk of defendant's outer clothing.[2] The protective frisk was "[n]egative for weapons," but the officer felt a bulge in one of defendant's pockets. Defendant agreed to allow Ust to remove the object, which turned out to be approximately $400 in cash.

Ust explained that he suspected defendant was a drug dealer and asked defendant to consent to a search of the vehicle. Defendant initially refused but eventually relented and signed a consent form after Ust repeated the request and advised defendant that they were going to conduct a "probable cause search" of the vehicle even if defendant refused to give consent.

The officers first searched the passenger cabin but did not find the source of the raw marijuana odor or any other evidence of illegal activity. Ust testified that there was "an abundant amount of odor of marijuana emanating from the backseat." The officers then proceeded to search the trunk where they discovered a loaded .45 caliber handgun wrapped in a blanket and a sock with shotgun shells in it.

In October 2017, defendant was charged by indictment with second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b), and third-degree

---

[2] Defendant does not challenge the lawfulness of the "consent" frisk.

A-0875-19

receiving stolen property, N.J.S.A. 2C:20-7. Defendant filed a motion to suppress the physical evidence seized during the warrantless search of his car, arguing that the motor vehicle stop was unlawful and that the ensuing search of the trunk was also unlawful.

On February 1, 2019, the trial judge convened an evidentiary hearing at which Officer Ust was the sole witness. The court heard oral argument on the motion on February 6, 2019. On March 12, 2019, the trial court rendered an oral decision, denying defendant's suppression motion. The court rejected defendant's contention that the motor vehicle stop was unlawfully initiated. The court also held that the search of the trunk was lawful because defendant had knowingly and voluntarily consented to the search. The judge also ruled, in the alternative, that the search of the trunk was lawful under the automobile exception to the warrant requirement. The judge entered a written order denying defendant's suppression motion on March 13, 2019.

Defendant was tried before a jury over the course of three consecutive days in June 2019. The jury acquitted defendant of receiving stolen property but convicted him of unlawful possession of the firearm.

A-0875-19

On September 6, 2019, the trial court sentenced defendant to seven years in state prison. The court imposed a forty-two month period of parole ineligibility as required under N.J.S.A. 2C:43-6(c).

This appeal followed. Defendant raises the following contentions for our consideration in his appeal brief:

> POINT I
>
> THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE HANDGUN BECAUSE THE EVIDENCE AT THE HEARING DID NOT ESTABLISH A BASIS FOR A LAWFUL STOP, THE OFFICERS LACKED PROBABLE CAUSE FOR SEARCHING THE TRUNK OF THE CAR, AND THE CONSENT OBTAINED BY [DEFENDANT] WAS NOT VOLUNTARILY GIVEN.
>
> A. THE EVIDENCE ADDUCED AT THE HEARING FAILED TO ESTABLISH THAT OFFICER UST HAD A REASONABLE BASIS FOR BELIEVING THAT THE TINT OF [DEFENDANT'S] WINDOWS WAS IN VIOLATION OF THE LAW.
>
> B. EVEN IF THE INITIAL STOP OF THE CAR WAS LAWFUL, THE OFFICERS NONETHELESS LACKED PROBABLE CAUSE TO SEARCH THE TRUNK OF THE CAR.
>
> C. [DEFENDANT] DID NOT PROVIDE VOLUNTARY, UNEQUIVOCAL CONSENT TO THE SEARCH OF THE TRUNK.

6

POINT II

THE STATE'S RELIANCE ON AN INFERENCE THAT [DEFENDANT] WAS GUILTY OF POSSESSING THE HANDGUN, AND THE ACCOMPANYING INSTRUCTION TO THE JURY THAT IT COULD FIND HE POSSESSED THE HANDGUN ON A "MORE PROBABLE THAN NOT" STANDARD, VIOLATED [DEFENDANT'S] CONSTITUTIONAL RIGHTS. (Not Raised Below)

A. THE STATUTORY INFERENCES OF N.J.S.A. 2C:39-2 UNCONSTITUTIONALLY ABRIDGE THE STATE'S BURDEN OF PROOF AND THE RIGHT OF A JURY FACTFINDER.

B. REGARDLESS OF THE CONSTITUTIONALITY OF N.J.S.A. 2C:39-2, THE JUDGE'S INSTRUCTIONS UNCONSTITUTIONALLY DILUTED THE STATE'S BURDEN OF PROOF ON AN ESSENTIAL ELEMENT OF THE OFFENSE AND PREVENTED THE JURY FROM PROPERLY CONSIDERING [DEFENDANT'S] DEFENSE.

POINT III

THE TRIAL COURT IMPROPERLY RENDERED AN EXCESSIVE SENTENCE BASED ON AN ERRONEOUS ANALYSIS OF THE AGGRAVATING AND MITIGATING FACTORS.

Defendant raises the following contentions in his reply brief:

7

POINT I

OFFICER UST'S CLAIM THAT HE SAW "EXCESSIVE TINT" ON "ALL FOUR WINDOWS" WAS BELIED BY THE FOOTAGE, IT DOES NOT MATTER WHETHER ALL FOUR WINDOWS OF [DEFENDANT'S] VEHICLE WERE TINTED BECAUSE OFFICER UST ADMITTED IN THE FOOTAGE TO PULLING [DEFENDANT] OVER ONLY FOR TINT ON THE REAR WINDOWS, AND OFFICER UST'S STOP BASED ON CONDUCT WHICH WAS NOT AN OFFENSE WAS UNCONSTITUTIONAL.

Defendant also submitted a letter pursuant to Rule 2:6-11(d) calling our attention to N.Y. State Rifle & Pistol Ass'n v. Bruen, 597 U.S. __, 142 S. Ct. 2111 (2022), a case decided by the United States Supreme Court on June 23, 2022. Defendant argues that Bruen invalidates New Jersey's statutory framework governing the issuance of handgun "carry" permits, N.J.S.A. 2C:58-4(c), and "by extension," invalidates the unlawful possession statute for which he was convicted, N.J.S.A. 2C:39-5(b). Defendant contends, "[a]ccordingly, in addition to the arguments made in [his] appellant and reply brief, he further submits that his conviction must be reversed because it is premised on a facially unconstitutional statute."

II.

A.

We focus our attention on defendant's contention that the motor vehicle stop was unlawful. We begin our analysis by acknowledging the legal principles governing this appeal. The "standard of review on a motion to suppress is deferential . . . ." State v. Nyema, 249 N.J. 509, 526 (2022); accord State v. Sims, 250 N.J. 189, 210 (2022). "[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Ahmad, 246 N.J. 592, 609 (2021) (alteration in original) (quoting State v. Elders, 192 N.J. 224, 243 (2007)); State v. S.S., 229 N.J. 360, 374 (2017). We "defer[] to those findings in recognition of the trial court's 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Nyema, 249 N.J. at 526 (quoting Elders, 192 N.J. at 244). However, "[a] trial court's legal conclusions . . . and its view of 'the consequences that flow from established facts,' are reviewed de novo." Id. at 526–27 (quoting State v. Hubbard, 222 N.J. 249, 263 (2015)); State v. Gamble, 218 N.J. 412, 425 (2014); State v. Gandhi, 201 N.J. 161, 176 (2010).

Turning to substantive legal principles, "[t]he Fourth Amendment and Article I, Paragraph 7 of the State Constitution guarantee individuals the right to be free from unreasonable searches and seizures." State v. Carter, 247 N.J. 488, 524 (2021). "When police stop a motor vehicle, the stop constitutes a seizure of persons, no matter how brief or limited." Nyema, 249 N.J. at 527.

In Delaware v. Prouse, the United States Supreme Court held that police may stop a vehicle only if they have a reasonable and articulable suspicion that a motor vehicle offense has been committed. 440 U.S. 648, 663 (1979). Such offenses include minor motor vehicle equipment violations. See State v. Bernokeits, 423 N.J. Super. 365, 370 (App. Div. 2011) ("A motor vehicle violation, no matter how minor, justifies a stop without any reasonable suspicion that the motorist has committed a crime or other unlawful act." (citing Prouse, 440 U.S. at 663)).

In State v. Bacome, the New Jersey Supreme Court reaffirmed that "[t]o be lawful, an automobile stop 'must be based on reasonable and articulable suspicion that an offense, including a minor traffic offense, has been or is being committed.'" 228 N.J. 94, 103 (2017) (quoting State v. Carty, 170 N.J. 632, 639–40 (2002)). Importantly, the State bears the burden at a motion to suppress to prove that a motor vehicle stop is supported by a reasonable and articulable

suspicion.  See State v. Atwood, 232 N.J. 433, 444 (2018) (quoting State v. Maryland, 167 N.J. 471, 489 (2001)).

Our Supreme Court has stressed that "raw, inchoate suspicion grounded in speculation cannot be the basis for a valid stop." State v. Scriven, 226 N.J. 20, 34 (2016).  Rather, the reasonable suspicion standard requires "some minimal level of objective justification for making the stop." State v. Nishina, 175 N.J. 502, 511 (2003) (emphasis added) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)); cf. State v. Puzio, 379 N.J. Super. 378, 382–84 (App. Div. 2005) (reversing the defendant's drunk driving conviction because the officer conducting the motor vehicle stop did not have an objectively reasonable basis for believing that defendant had committed a motor vehicle offense).

Importantly, "the State is not required to prove that the suspected motor-vehicle violation occurred." State v. Locurto, 157 N.J. 463, 470 (1999).  Rather, "[c]onstitutional precedent requires only reasonableness on the part of the police, not legal perfection.  Therefore, the State need prove only that the police lawfully stopped the car, not that it could convict the driver of the motor-vehicle offense." State v. Williamson, 138 N.J. 302, 304 (1994); see also State v. Sutherland, 231 N.J. 429, 439 (2018).

But as the Court recently stressed in Nyema,

[a]lthough reasonable suspicion is a less demanding standard than probable cause, "[n]either 'inarticulate hunches' nor an arresting officer's subjective good faith can justify infringement of a citizen's constitutionally guaranteed rights." State v. Stovall, 170 N.J. 346, 372 (2002) (Coleman, J., concurring in part and dissenting in part) (quoting State v. Arthur, 149 N.J. 1, 7–8 (1997)); accord State v. Alessi, 240 N.J. 501, 518 (2020). Determining whether reasonable and articulable suspicion exists for an investigatory stop is a highly fact-intensive inquiry that demands evaluation of "the totality of circumstances surrounding the police-citizen encounter, balancing the State's interest in effective law enforcement against the individual's right to be protected from unwarranted and/or overbearing police intrusions." State v. Privott, 203 N.J. 16, 25–26 (2010) (quoting State v. Davis, 104 N.J. 490, 504 (1986)).

[Nyema, 249 at 527–28.]

We emphasize, moreover, that when a motor vehicle stop is based solely on an alleged equipment violation, the reasonable and articulable suspicion for that violation must be developed before the stop is initiated. Just as a search is not made good by what it turns up,[3] a motor vehicle stop based solely on an equipment violation cannot be validated post hoc by what the officer learns upon closer inspection of the vehicle during the course of the investigative detention.

---

[3] See Wong Sun v. United States, 371 U.S. 471, 484 (1963) (rejecting the proposition "that a search unlawful at its inception may be validated by what it turns up.")

12

Rather, the stop is lawful or not <u>at the moment the Fourth Amendment seizure is initiated</u>.

Furthermore, reasonable suspicion analysis takes into account "the officers' background and training and permits them 'to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person."'" <u>State v. Nelson</u>, 237 N.J. 540, 555 (quoting <u>United States v. Arvizu</u>, 534 U.S. 266, 273 (2002)); <u>Stovall</u>, 170 N.J. at 363 ("It is fundamental to a totality of the circumstances analysis of whether reasonable suspicion exists that courts may consider the experience and knowledge of law enforcement officers."). Correspondingly, an officer's lack of training and experience may be relevant in assessing the inferences, deductions, and conclusions he or she draws.

Turning specifically to the law regarding tinted windows, in <u>State v. Cohen</u>, we held that the darkly tinted windows on Cohen's vehicle provided a lawful basis to initiate a motor vehicle stop. 347 N.J. Super. 375, 380–81 (App. Div. 2002). We noted that the officer's reasonable suspicion was "based upon his initial observation that the [defendant's] windows were so darkly tinted <u>as to obstruct vision</u> . . . ." <u>Id.</u> at 380 (emphasis added).

In State v. Smith, our Supreme Court recently provided further guidance on when police may stop a vehicle based solely on tinted windows. 251 N.J. 244 (2022).[4] In that case, detectives stopped behind a vehicle at a red light. Id. at 253. After the light turned green, the detectives activated their emergency lights and sirens because the vehicle in front of them had a tinted rear windshield. Ibid. Despite the tinting, the detectives were able to determine that the only individual in the car was the driver—the defendant. Ibid.

Our Supreme Court examined the various statutes pertaining to motor vehicle glazing. The Court first determined that N.J.S.A. 39:3-75—a statute that we had relied upon in Cohen—does not provide a basis upon which to stop a vehicle. Id. at 260–61. That statute provides in relevant part:

> No person shall drive any motor vehicle manufactured on or after July first, nineteen hundred and thirty-five and registered in this State unless such vehicle is equipped with approved safety glazing material wherever glazing is used in doors, windows and windshields. The term "windshield" shall be construed to include wings, deflectors and side shields; also front corner lights adjoining windshields.
>
> Every section of safety glazing material shall be legibly and permanently marked with the manufacturers' distinctive designations, under which the safety glazing

---

[4] We have considered supplemental letters from counsel addressing Smith. See R. 2:6-11(d).

material was approved, so as to be visible when
installed.

No person shall drive any motor vehicle equipped with
safety glazing material which causes undue or unsafe
distortion of visibility or equipped with unduly
fractured, discolored or deteriorated safety glazing
material, and the director may revoke the registration
of any such vehicle.

[N.J.S.A. 39:3-75 (emphasis added).]

The Court determined that "[t]he plain language of section 75 indicates that it is concerned solely with the quality and maintenance of such safety glazing material, not aftermarket tinted window film."  Smith, 251 N.J. at 261. As a result, and as the State conceded, that statute had "no bearing" in resolving the Fourth Amendment matter before it.  Ibid.[5]

The Court next focused on N.J.S.A. 39:3-74.  That statute provides:

Every motor vehicle having a windshield shall be
equipped with at least one device in good working order
for cleaning rain, snow or other moisture from the
windshield so as to provide clear vision for the driver,
and all such devices shall be so constructed and
installed as to be operated or controlled by the driver.

_____

[5]  The Court also determined that other statutory provisions addressing motor vehicle window tinting are inapplicable.  Specifically, the Court concluded that N.J.S.A. 39:3-75.1 and 39:3-75.2 did not support the stop in that case.  Smith, 251 N.J. at 261.  Moreover, the Court departed from Cohen, "to the extent that it ties violations of N.J.S.A. 39:3-74 to the standards set forth in N.J.A.C. 13:20-33.7."  Id. at 262.  The Court noted that N.J.A.C. 13:20-33.7 does not apply to non-commercial vehicles.  Ibid.

No person shall drive any motor vehicle with any sign, poster, sticker or other non-transparent material upon the front windshield, wings, deflectors, side shields, corner lights adjoining windshield or front side windows of such vehicle other than a certificate or other article required to be so displayed by statute or by regulations of the commissioner.

No person shall drive any vehicle so constructed, equipped or loaded as to unduly interfere with the driver's vision to the front and to the sides.

[N.J.S.A. 39:3-74.]

The Court ultimately ruled that under N.J.S.A. 39:3-74, "reasonable and articulable suspicion of a tinted windows violation arises only when a vehicle's front windshield or front side windows are so darkly tinted that police cannot clearly see people or articles within the car." Smith, 251 N.J. at 253. The Court later in its opinion expounded that "[i]n order to establish a reasonable suspicion of a tinted windows violation under N.J.S.A. 39:3-74, the State will . . . need to present evidence that tinting on the front windshield or front side windows inhibited officers' ability to clearly see the vehicle's occupants or articles inside." Id. at 266.[6]

---

[6] The State contends that Smith announced a new rule that the Court intended should only be applied prospectively. Defendant argues that Smith merely clarified a misunderstanding concerning the applicability of various statutory

16

Applying that principle to the record in the matter before it, the Court concluded that the detectives did not have a reasonable and articulable suspicion to believe N.J.S.A. 39:3-74 was being violated because the testimony at the suppression hearing only established that the rear windshield of Smith's vehicle had tinted windows. Id. at 260. "Under the statute's plain language, the tint on [the defendant's] rear windshield could not constitute a violation of N.J.S.A. 39:3-74." Ibid. The Court ultimately concluded that, "[u]nlike the dark tinted front driver- and passenger-side windows that prompted the investigatory stop in Cohen, [the defendant's] tinted rear windshield could not be considered a 'significant obstruction' of the driver's vision . . . ." Id. at 262.

B.

We next apply the governing legal principles to the facts presented in this case. The trial court found that Officer Ust testified credibly that he initiated a motor vehicle stop because "all four windows had excessive tinting in violation

_____

provisions addressing motor vehicle window tinting, including N.J.S.A. 39:3-75. We reiterate that the State in Smith conceded that section 75 had no bearing in that case. Smith, 251 N.J. at 261. We need not address the State's retroactivity argument because we are satisfied that the State failed at the suppression hearing to present evidence concerning obstructed/inhibited vision—a circumstance explicitly addressed in both Smith and Cohen.

A-0875-19

of [N.J.S.A.] 39:3-75."[7]  The trial court further found, that "defendant admitted that his windows were tinted and that he was aware it was a violation of New Jersey law."[8]

The trial court concluded:

> In this case, based on the totality of the facts and circumstances of the case, including Officer Ust's credible testimony, the MVRs and the defendant's own admission, the Court finds the State established by a preponderance of the evidence that Officer Ust possessed sufficient information to form a reasonable suspicion that a motor vehicle violation had been . . . committed when he stopped the defendant's vehicle.

Although we defer to a trial court's credibility assessments, in this instance, the critical inquiry is not whether Officer Ust was truthful in recounting the circumstances of the encounter.  Rather, the key issue before us is whether his testimony at the suppression hearing provided sufficiently

---

[7]  The State on appeal does not dispute that New Jersey law does not regulate tinting on rear side windows.  And as we have noted, the Court in <u>Smith</u> made clear that N.J.S.A. 39:3-75 is inapplicable when determining whether an officer has a reasonable and articulable suspicion to stop a motor vehicle for tinted windows.  251 N.J. at 261.  Accordingly, we now know that the trial court's citation to that provision was misplaced.

[8]  We deem defendant's purported roadside "admission" to a tinted windows violation to be irrelevant to whether there was reasonable suspicion to justify the stop.  It is not disputed that the windows were tinted.  Officer Ust's leading question may have misled defendant to believe that window tinting was prohibited per se.

detailed information regarding the tinted windows to establish an objectively reasonable basis for a Fourth Amendment seizure.

In addressing that foundational question, we reject defendant's contention that the stop was unlawful because Ust testified that "all four" windows were tinted, thus revealing the officer's miscomprehension of the relevant statute, which applies only to the front windshield and front side windows. See Smith, 251 N.J. at 253, 266; see also supra note 7. Ust's testimony that all four windows were tinted necessarily encompasses the front side windows. This is not a situation as in Smith where the detectives' testimony pertained only to the rear windshield, which is not regulated under the tinted windows statute. 251 N.J. at 252. Ust's testimony relating to the rear side windows, therefore, is essentially surplusage that we deem to be irrelevant except to the extent it reveals the officer's lack of training and experience regarding enforcement of the tinted windows statute.

After carefully reviewing the record, we conclude that Ust's testimony pertaining to the front driver's side window failed to establish reasonable and articulable suspicion of a tinted windows violation. Notably, Ust never testified

19

at the suppression hearing that the tinted front side window actually inhibited his ability to see the driver as defendant's vehicle passed by.[9]

Furthermore, the record does not show that Ust received training regarding tinted windows and as to what constitutes a statutory violation. Nor did Ust testify that he had personal experience in enforcing the tinted windows provision. Cf. State v. Smith, 155 N.J. 83, 99 (1998) (finding that there was no suggestion the officer actually used his experience to infer that a suspect was selling drugs, and therefore his experience did not contribute to a finding of probable cause). In these circumstances, we conclude that Ust had neither the specialized training nor personal experience, see Nelson, 237 N.J. at 555, to provide an objective benchmark to support his opinion that the tinting on the windows of defendant's car was "excessive." See Nishina, 175 N.J. at 510–11 (The reasonable articulable suspicion standard requires "some minimal objective justification for making the stop."). We thus conclude that the officer's

---

[9] We note that the MVR recording played at the suppression hearing shows that Ust commented to a backup officer that the vehicle's "windows were blacked out." Ust did not use that description in his testimony at the suppression hearing. But even accepting that the statement Ust made to a backup officer is part of the totality of the circumstances presented by the State at the suppression hearing, we deem the phrase "blacked out" to be a colloquial—if not exaggerated—description tantamount to Ust's testimony that the windows were "excessively tinted."

characterization of the windows as being "excessive[ly]" tinted is simply too subjective to justify a Fourth Amendment liberty intrusion. We decline in this case to "fill in gaps in the record to supply the requisite proofs required of the State under constitutional standards." State v. Wilson, 178 N.J. 7, 17 (2003); see Smith, 251 N.J. at 266 (holding the State bears the burden "to present evidence that tinting on the front windshield or front side windows inhibited officers' ability to clearly see the vehicle's occupants or articles inside." (emphasis added)).

We acknowledge that the State presented a video recording at the suppression hearing that shows defendant's vehicle as it passed by the stationary police vehicle. It is well-established that a trial court's factual determination based on its review of a video recording is subject to a deferential standard of appellate review. See S.S., 229 N.J. at 365. In this instance, however, although the trial court briefly mentioned that the MVR recording was considered as part of the totality of the circumstances, the court did not make a specific finding that the video showed obstructed vision. Rather, the trial court merely found that "[t]he MVR confirms the vehicle had tinting on all four windows." The trial court, in other words, made no specific finding that the front window tinting

inhibited Officer Ust from seeing the driver who otherwise would have been clearly visible.

Our own review of the video shows that only a small portion of the front driver's side window is visible. Considering the pre-dawn lighting conditions, the distance between the stationary police car and defendant's moving vehicle, and the angle at which defendant's Audi passed by the parked police car, the video does not establish—even to the mere reasonable-suspicion standard of proof—that the window tinting would inhibit an officer from clearly seeing the driver in the unlit passenger compartment. Indeed, given these conditions, it is doubtful the officer could have clearly seen the driver even if the front side window was not tinted at all. Any inhibition in clearly observing the driver, in other words, was not attributable to the window tinting, but rather to other conditions and circumstances beyond defendant's control. See Smith, 251 N.J. at 266 (The State must present evidence "that tinting . . . inhibited officers' ability to clearly see the vehicle's occupants or articles inside." (emphasis added)). The present situation is thus distinguishable from Cohen, where we noted that the officer's reasonable suspicion was "based upon his initial observation that the windows were so darkly tinted as to obstruct vision." 347 N.J. Super. at 380 (emphasis added).

In sum, the video recording does not change our analysis. We thus conclude the State failed to meet its burden at the suppression hearing, and that the gun found in the trunk must be suppressed as a fruit of the unlawful motor vehicle stop. See Wong Sun, 371 U.S. at 484–88 (holding the exclusionary rule extends to direct and indirect products of unlawful police conduct). Accordingly, we need not address defendant's remaining Fourth Amendment contentions that the trial judge erred in ruling that: (1) defendant knowingly and voluntarily consented to the search of the trunk; and (2) even if the consent-to-search was invalid, the warrantless search of the trunk was authorized under the New Jersey automobile exception, State v. Witt, 223 N.J. 409 (2015).

Relatedly, because defendant's trial conviction must be vacated, we need not address defendant's sentencing contention or his novel arguments that: (1) the statutory permissive inferences established in N.J.S.A. 2C:39-2 are unconstitutional; and (2) the crime of possessing a handgun without a permit codified in N.J.S.A. 2C:39-5(b) violates the Second Amendment. See Comm. to Recall Robert Menendez from the Off. of U.S. Senator v. Wells, 204 N.J. 79, 95 (2010) (As a general principle, courts "strive to avoid reaching constitutional questions unless required to do so."); Randolph Town Center, L.P. v. Cnty. of Morris, 186 N.J. 78, 80 (2006) ("Courts should not reach a constitutional

question unless its resolution is imperative to the disposition of litigation" (citing In re N.J. Am. Water Co., 169 N.J. 181, 197 (2001))).

We reverse, vacate defendant's conviction and sentence, and remand for the trial court to arrange for defendant's release if he is still confined. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0875-19