SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**State v. Dwight M. Nelson** (A-60-17) (080159)

**Argued January 28, 2019 -- Decided May 8, 2019**

**FERNANDEZ-VINA, J., writing for the Court.**

In this appeal, the Court considers whether the wait for a canine unit's arrival prolonged defendant's traffic stop, and if so, whether the delay was justified by independent reasonable and articulable suspicion that defendant possessed drugs.

New Jersey State Police (NJSP) Detective Jason Kazan learned that the Bureau of Alcohol, Tobacco, and Firearms (ATF) had passed along a tip that a silver Infinity FX35 with a particular plate driven by an African-American male would be traveling on the Turnpike and transporting a large quantity of marijuana. Thirteen minutes after receiving the tip, the NJSP spotted the car and made a traffic stop, citing the driver for failing to maintain his lane and following another vehicle too closely, both Title 39 violations.

Detective Kazan noticed an overwhelming smell of air freshener emanating from defendant Dwight Nelson's vehicle and saw "Febreze" air fresheners located in several areas of the car. Based on his training and experience, Detective Kazan testified that air fresheners can be used as a masking agent for drugs. Nelson was then asked to step out of his car, where he was administered his Miranda warnings. Once Detective Kazan began speaking with Nelson, he noticed that Nelson was sweating profusely, appeared visibly nervous, and was shaking and trembling. Detective Kazan also testified that Nelson's story about where he was going changed during their conversation. At first, Nelson told the detective he had been in the Bronx to visit his aunt and was now on his way to Philadelphia to visit his cousin, but later Nelson stated he had been visiting his cousin in New York and was heading to Philadelphia to visit a friend. Detective Kazan noticed that Nelson's car was devoid of any personal belongings, aside from two very large bundles in the cargo hold of the car. Detective Kazan asked Nelson what the bags contained, and Nelson stated they contained shoes from a store he was closing. Nelson admitted that he had been previously arrested for possession of marijuana.

Based on his belief that Nelson's car contained narcotics, Detective Kazan asked Nelson for permission to search the vehicle, but Nelson denied the request. Detective Kazan testified that he believed there was "reasonable articulable suspicion [that] there was crime afoot" and called for a canine unit to be brought to the scene at 7:21 p.m.

1

The canine arrived at 7:58 p.m. and conducted a sniff of Nelson's vehicle. The canine alerted the officers to the presence of narcotics in the rear hatch of the vehicle. Detective Kazan then placed Nelson under arrest and called for a tow truck. At 11:15 p.m., Detective Kazan secured a search warrant and conducted a search of Nelson's vehicle, which led to the discovery of eighty pounds of marijuana.

Nelson moved to suppress the evidence found in his vehicle. The motion court recognized that "Detective Kazan extended the length of time of the initial motor vehicle stop and expanded the scope of the search beyond the limits of the motor vehicle stop," but determined that Detective Kazan had reasonable and articulable suspicion to do so. The court denied Nelson's motion, and Nelson pled guilty to possession of marijuana with intent to distribute.

On appeal, the Appellate Division affirmed but stated that "the use of the canine unit did not prolong the stop more than reasonably required to complete [the] Title 39 enforcement mission."

The Court granted Nelson's petition for certification. 233 N.J. 211 (2018).

**HELD:** Nelson's traffic stop was prolonged as he waited for the arrival of the canine unit, but the officers had developed the reasonable and articulable suspicion necessary to prolong the stop under State v. Dunbar, 229 N.J. 521, 540 (2017). The Court therefore affirms as modified the Appellate Division's determination that the evidence seized during the car's subsequent search should not be suppressed.

1. The Fourth Amendment of the Federal Constitution and Article I, Paragraph 7 of the New Jersey Constitution guarantee the right to be free from unreasonable searches and seizures. "A lawful roadside stop by a police officer constitutes a seizure under both the Federal and New Jersey Constitutions." Dunbar, 229 N.J. at 532. During a lawful traffic stop, a police officer is permitted to "inquire into matters unrelated to the justification for the traffic stop." Id. at 533. If, during the course of the stop or as a result of the reasonable inquiries initiated by the officer, the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden the inquiry and satisfy those suspicions. (pp. 12-13)

2. The Court held in Dunbar that "an officer does not need reasonable suspicion independent from the justification for a traffic stop in order to conduct a canine sniff." 229 N.J. at 540. However, "an officer may not conduct a canine sniff in a manner that prolongs a traffic stop beyond the time required to complete the stop's mission, unless he possesses reasonable and articulable suspicion to do so." Ibid. "In other words, in the absence of such suspicion, an officer may not add time to the stop." Ibid. (pp. 13-14)

3. In this case, it is established that the initial traffic stop was a lawful response to the Title 39 violations Detective Kazan observed. Two determinations must therefore be made: whether the wait for the canine unit's arrival prolonged Nelson's traffic stop, and, if so, whether the delay was justified by independent reasonable and articulable suspicion that Nelson possessed drugs at that time. Regarding the first determination, "[t]he critical question . . . is . . . whether conducting the sniff . . . add[ed] time to . . . the stop." Id. at 536. Here, after Nelson denied the detectives consent to search his vehicle, the detectives then "added time" to Nelson's traffic stop when they required him to wait thirty-seven minutes for the arrival of the canine unit. (pp. 14-15)

4. The Court therefore considers whether a reasonable and articulable suspicion beyond that which justified the stop supported the canine sniff. As Detective Kazan testified, he believed there was "reasonable articulable suspicion [that] there was crime afoot" based on the following factors: (1) the initial tip from ATF; (2) the moving violations observed; (3) Nelson's nervous behavior; (4) Nelson's conflicting trip itinerary; (5) the lack of any personal belongings in the vehicle; (6) the large bags in the cargo hold; (7) Nelson's admission of prior narcotics arrests; and (8) the overwhelming smell of air freshener. The detective's observations, taking into account his training and experience, suggested criminal activity and provided the reasonable suspicion necessary to prolong Nelson's stop to await the arrival of the canine unit. (pp. 15-16)

      **AFFIRMED AS MODIFIED.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA'S opinion.**

State of New Jersey,

Plaintiff-Respondent,

v.

Dwight M. Nelson,
a/k/a Nelson Dwight,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| January 28, 2019 | May 8, 2019 |

Alicia J. Hubbard, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Alicia J. Hubbard, of counsel and on the briefs).

Jane C. Schuster, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Jane C. Schuster, of counsel and on the briefs, and Michele C. Buckley, Special Deputy Attorney General/Acting Union County Assistant Prosecutor, on the briefs).

Tess Borden argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation,

attorneys; Tess Borden, Alexander Shalom, Edward Barocas and Jeanne LoCicero, on the brief).

JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

In this appeal, the Court considers whether the wait for a canine unit's arrival prolonged defendant's traffic stop, and if so, whether the delay was justified by independent reasonable and articulable suspicion that defendant possessed drugs.

In October 2014, a New Jersey State Police (NJSP) detective received an anonymous tip from the Bureau of Alcohol, Tobacco, and Firearms (ATF), stating that a silver Infinity FX35 with a particular license plate driven by an African-American male would be traveling on the New Jersey Turnpike and transporting a large quantity of marijuana. Thirteen minutes after receiving the tip, the NJSP spotted the car and made a traffic stop, citing the driver for failing to maintain his lane and following another vehicle too closely.

During the traffic stop, NJSP Detective Jason Kazan asked defendant Dwight Nelson to exit his vehicle and read him his Miranda[1] rights. Detective Kazan noticed an overwhelming smell of air freshener emanating from Nelson's vehicle and that Nelson seemed nervous and sweaty during the

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

2

interaction.  Detective Kazan also found it suspicious that there were two large bags in the cargo hold of Nelson's car and that Nelson's story regarding his travel plans changed during questioning.

Detective Kazan asked Nelson to consent to a search of his vehicle, which Nelson refused.  Shortly thereafter, Detective Kazan called for a canine unit to come to the scene.  Thirty-seven minutes later, a canine unit arrived and the canine alerted the detective to the presence of narcotics in Nelson's car.  After Nelson was arrested, the NJSP obtained a warrant and searched his vehicle, finding eighty pounds of marijuana.

Nelson filed a motion to suppress the evidence discovered in his vehicle, claiming the police improperly extended the motor vehicle stop beyond its mission and without reasonable suspicion in order to transport a canine unit to the scene.  The trial court rejected that argument and denied Nelson's motion, concluding that "Detective Kazan had reasonable and articulable suspicion to request the presence of a drug-sniffing dog" and that therefore "the extension of the traffic stop to effectuate the dog-sniff was lawful under New Jersey law."  The Appellate Division affirmed but stated that "the use of the canine unit did not prolong the stop more than reasonably required to complete [the] Title 39 enforcement mission."

3

We conclude that Nelson's traffic stop was prolonged as he waited for the arrival of the canine unit, but that the officers had developed the reasonable and articulable suspicion necessary to prolong the stop under State v. Dunbar, 229 N.J. 521, 540 (2017). We therefore affirm as modified the Appellate Division's determination that the evidence seized during the car's subsequent search should not be suppressed.

I.

A.

On October 10, 2014, at approximately 6:30 p.m., NJSP Detective Jason Kazan learned that ATF in Cranbury had passed along a tip relating to a vehicle that was expected to be traveling through New Jersey. ATF provided the following information: a silver Infinity FX35 with a Florida registration and a specifically identified license plate number would be driven by an African-American male on the Turnpike from New York to Pennsylvania carrying a large amount of marijuana. The identities of both the tipster and ATF agent who passed along the tip are unknown.

After learning this information, Detective Kazan and two additional detectives went out in an unmarked police vehicle in an attempt to intercept the vehicle while it traveled on the Turnpike. Detective Kazan eventually

4

located Nelson's vehicle on the Turnpike and pulled him over at approximately 6:43 p.m. for violating Title 39 traffic laws.[2]

Nelson lowered his driver-side window and Detective Kazan "was immediately overwhelmed by the smell of air fresheners emanating from the vehicle." Detective Kazan also saw "Febreze" air fresheners located in several areas of the car. Based on his training and experience, Detective Kazan testified that air fresheners can be used as a masking agent for drugs. Nelson was then asked to step out of his car, where he was administered his <u>Miranda</u> warnings.

Once Detective Kazan began speaking with Nelson, he noticed that Nelson was sweating profusely, appeared visibly nervous, and was shaking and trembling. Detective Kazan also testified that Nelson's story about where he was going changed during their conversation. At first, Nelson told the detective he had been in the Bronx to visit his aunt and was now on his way to Philadelphia to visit his cousin, but later Nelson stated he had been visiting his cousin in New York and was heading to Philadelphia to visit a friend. Nelson

---

[2] Nelson was ultimately cited for three Title 39 violations: following another vehicle too closely, contrary to N.J.S.A. 39:4-89; unsafely changing lanes, contrary to N.J.S.A. 39:4-88(b); and operating a motor vehicle while in possession of narcotics, contrary to N.J.S.A. 39:4-49.1.

5

failed to give exact addresses of the individuals whom he visited, in both instances.

During this exchange, Detective Kazan noticed that Nelson's car was devoid of any personal belongings, aside from two very large bundles in the cargo hold of the car. Detective Kazan asked Nelson what the bags contained, and Nelson stated they contained shoes from a store he was closing. During their conversation, Nelson also admitted that he had been previously arrested for possession of marijuana.

Based on his belief that Nelson's car contained narcotics, Detective Kazan asked Nelson for permission to search the vehicle, but Nelson denied the request. Detective Kazan testified that he believed there was "reasonable articulable suspicion [that] there was crime afoot" based on the following factors: (1) the initial tip from ATF; (2) the moving violations observed; (3) Nelson's nervous behavior; (4) Nelson's conflicting accounts of his trip itinerary; (5) the lack of any personal belongings in the vehicle; (6) the large bags in the cargo hold; (7) Nelson's admission of prior narcotics arrests; and (8) the overwhelming smell of air freshener.

Considering those factors, Detective Kazan called for a canine unit to be brought to the scene at 7:21 p.m. The canine arrived at 7:58 p.m. and conducted a sniff of Nelson's vehicle. The canine alerted the officers to the

6

presence of narcotics in the rear hatch of the vehicle. Detective Kazan then placed Nelson under arrest and called for a tow truck.

The detectives transported the vehicle to the Newark Police Station and proceeded with an application for a search warrant. At 11:15 p.m., Detective Kazan secured a search warrant and conducted a search of Nelson's vehicle. A search of the vehicle led to the discovery of eighty pounds of marijuana located in the two bundles, and Detective Kazan issued citations for Nelson's two traffic violations and for driving while in possession of narcotics.

B.

On September 28, 2015, the parties appeared before the trial court for a motion to suppress the evidence found in Nelson's vehicle. In his motion, Nelson contended that the motor vehicle stop and subsequent search of his vehicle violated his Fourth Amendment rights. Detective Kazan was the only witness to testify at the suppression hearing.

The motion court analyzed one issue relevant to this appeal: whether the extension of the traffic stop to allow for the dog-sniff of Nelson's vehicle was constitutional. The motion court recognized that "Detective Kazan extended the length of time of the initial motor vehicle stop and expanded the scope of the search beyond the limits of the motor vehicle stop." The court determined, however, that Detective Kazan had reasonable and articulable suspicion to do

7

so based upon the independently corroborated information provided by ATF, along with Nelson's nervous behavior, Nelson's conflicting itinerary statements, the presence of large bags in the car's cargo area, Nelson's admission of prior arrests, and the car's strong odor of air fresheners.

On November 2, 2015, Nelson pled guilty to first-degree possession of marijuana with intent to distribute, contrary to N.J.S.A. 2C:35-5(a)(1), in a quantity over twenty-five pounds, contrary to N.J.S.A. 2C:35-5(b)(10)(a). The court sentenced Nelson to a term of six years' imprisonment with twenty-seven months of parole ineligibility and imposed the mandatory fines and penalties. Nelson appealed the denial of his motion to suppress pursuant to Rule 3:5-7(d).

On appeal, Nelson argued that the wait for the canine unit's arrival unreasonably prolonged his detention. The Appellate Division rejected Nelson's argument. The panel accepted the motion court's factual findings that Nelson refused to consent to a search of his car at 7:21 p.m. and the canine unit arrived at 7:58 p.m. The panel also turned to this Court's ruling in Dunbar that an officer cannot "conduct a canine sniff in a manner that prolongs a traffic stop beyond the time required to complete the stop's mission, unless he possesses reasonable and articulable suspicion to do so." (quoting 229 N.J. at 540). The panel considered the circumstances and timeline of the stop in this

8

case and concluded that "the use of the canine unit did not prolong the stop more than reasonably required to complete [the] Title 39 enforcement action." The panel thus affirmed what it characterized as the motion judge's finding that "the canine search did not unreasonably prolong the Title 39 enforcement stop" and that the evidence therefore should not be suppressed.

Nelson sought certification from this Court, which we granted. 233 N.J. 211 (2018). This Court also granted the American Civil Liberties Union of New Jersey (ACLU) leave to appear as amicus curiae.

## II.

## A.

Nelson contends that the thirty-seven minutes between his denial of consent to search his vehicle and the arrival of the canine unit unlawfully extended the motor vehicle stop. Nelson argues that the Appellate Division inappropriately determined that the time waiting for the arrival of the canine unit did not unreasonably prolong the Title 39 enforcement stop. Nelson further argues that the totality of the circumstances surrounding the motor vehicle stop in this case did not create the reasonable and articulable suspicion necessary for the police to extend the stop under Dunbar.

## B.

9

The arguments presented by the ACLU largely echo those made by Nelson. The ACLU asserts that the canine sniff was impermissible because it unlawfully extended the length of the motor vehicle stop.

First, the ACLU relies upon <u>Dunbar</u> to argue that any prolongation of the motor vehicle stop rendered the canine search unconstitutional without independent reasonable and articulable suspicion to extend the detention. The ACLU suggests that the question in this case is not whether the extension of the traffic stop was "too long," but rather "whether the canine sniff prolonged the stop at all." Next, the ACLU argues that the canine sniff was not justified because neither the anonymous tip nor Nelson's behavior during the traffic stop created a reasonable articulable suspicion of criminal activity.

C.

The State argues that when considering the totality of the circumstances, the police had reasonable and articulable suspicion to extend Nelson's motor vehicle stop. Specifically, the State contends that the combination of ATF tip, the "overwhelming odor of air freshener" emanating from Nelson's car, Nelson's nervous behavior, Nelson's conflicting stories, and Nelson's previous narcotics arrests established the reasonable articulable suspicion necessary under <u>Dunbar</u> to extend the length of Nelson's detention.

III.

10

"When an appellate court reviews a trial court's decision on a motion to suppress, the reviewing court defers to the trial court's factual findings, upholding them 'so long as sufficient credible evidence in the record supports those findings.'" In Interest of J.A., 233 N.J. 432, 445 (2018) (quoting State v. Gonzales, 227 N.J. 77, 101 (2016)). "An appellate court 'should give deference to those findings of the trial judge which are substantially influenced by [the] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

"An appellate court should not disturb the trial court's findings merely because 'it might have reached a different conclusion were it the trial tribunal' or because 'the trial court decided all evidence or inference conflicts in favor of one side' in a close case." Ibid. (quoting Johnson, 42 N.J. at 162). "The governing principle, then, is that '[a] trial court's findings should be disturbed only if they are so clearly mistaken that the interests of justice demand intervention and correction.'" State v. Robinson, 200 N.J. 1, 15 (2009) (alteration in original) (quoting Elders, 192 N.J. at 244).

IV.

A.

11

The Fourth Amendment of the Federal Constitution and Article I, Paragraph 7 of the New Jersey Constitution guarantee the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. "Those provisions impose a standard of reasonableness on the exercise of discretion by government officials to protect persons against arbitrary invasions." State v. Maristany, 133 N.J. 299, 304 (1993).

"A lawful roadside stop by a police officer constitutes a seizure under both the Federal and New Jersey Constitutions." Dunbar, 229 N.J. at 532. "To be lawful, an automobile stop 'must be based on reasonable and articulable suspicion that an offense, including a minor traffic offense, has been or is being committed.'" State v. Bacome, 228 N.J. 94, 103 (2017) (quoting State v. Carty, 170 N.J. 632, 639-40, modified on other grounds, 174 N.J. 351 (2002)).

During a lawful traffic stop, a police officer is permitted to "inquire 'into matters unrelated to the justification for the traffic stop,'" Dunbar, 229 N.J. at 533 (quoting Arizona v. Johnson, 555 U.S. 323, 333 (2009)), and "may make 'ordinary inquiries incident to [the traffic] stop,'" ibid. (alteration in original) (quoting Rodriguez v. United States, 575 U.S. ___, 135 S. Ct. 1609, 1615 (2015)). "If, during the course of the stop or as a result of the reasonable inquiries initiated by the officer, the circumstances 'give rise to suspicions unrelated to the traffic offense, an officer may broaden [the] inquiry and

12

satisfy those suspicions.'" State v. Dickey, 152 N.J. 468, 479-80 (1998) (alteration in original) (quoting United States v. Johnson, 58 F.3d 356, 357-58 (8th Cir. 1995)).

## B.

"[A] canine sniff is sui generis and does not transform an otherwise lawful seizure into a search that triggers constitutional protections." Dunbar, 229 N.J. at 538 (citing United States v. Place, 462 U.S. 696, 706-07 (1983)). "Canine sniffs do not involve the unveiling of noncontraband items that would otherwise remain unexposed to public view and signal only the presence or absence of illegal items." Id. at 539 (citing Place, 462 U.S. at 707). "Canine sniffs therefore constitute a unique procedure that is less intrusive than a search." Ibid.

As a result, we held in Dunbar that "an officer does not need reasonable suspicion independent from the justification for a traffic stop in order to conduct a canine sniff." 229 N.J. at 540. However, "an officer may not conduct a canine sniff in a manner that prolongs a traffic stop beyond the time required to complete the stop's mission, unless he possesses reasonable and articulable suspicion to do so." Ibid. "In other words, in the absence of such suspicion, an officer may not add time to the stop." Ibid. "The critical question . . . is not whether [a] dog sniff occurs before or after the officer

13

issues a ticket . . . but whether conducting the sniff 'prolongs' -- i.e., adds time to -- 'the stop.'" Id. at 536 (second ellipsis in original) (quoting Rodriguez, 135 S. Ct. at 1616).

V.

In this case, it is established that the initial traffic stop was a lawful response to the Title 39 violations Detective Kazan observed. We must therefore make two determinations: whether the wait for the canine unit's arrival prolonged Nelson's traffic stop, and, if so, whether the delay was justified by independent reasonable and articulable suspicion that Nelson possessed drugs at that time.

Regarding the first determination, "[t]he critical question . . . is . . . whether conducting the sniff . . . add[ed] time to . . . the stop." Dunbar, 229 N.J. at 536 (internal quotation marks omitted) (quoting Rodriguez, 135 S. Ct. at 1616). Here, after Nelson denied the detectives consent to search his vehicle, the detectives then "added time" to Nelson's traffic stop when they required him to wait thirty-seven minutes for the arrival of the canine unit. It is worth noting that the stop was made on the New Jersey Turnpike, a limited-access highway, thus necessitating a longer period of time for the canine unit to arrive on the scene. Nelson's stop was nonetheless prolonged -- it exceeded

14

the time needed to accomplish the "tasks tied to the traffic infraction[s]." Rodriguez, 135 S. Ct. at 1614.

We therefore consider whether a reasonable and articulable suspicion beyond that which justified the stop supported the canine sniff. See Dunbar, 229 N.J. at 540 ("[I]f an officer has articulable reasonable suspicion independent from the reason for the traffic stop that a suspect possesses narcotics, the officer may continue a detention to administer a canine sniff.").

As Detective Kazan explained at the suppression hearing, he believed there was "reasonable articulable suspicion [that] there was crime afoot" based on the following factors:  (1) the initial tip from ATF; (2) the moving violations observed; (3) Nelson's nervous behavior; (4) Nelson's conflicting trip itinerary; (5) the lack of any personal belongings in the vehicle; (6) the large bags in the cargo hold; (7) Nelson's admission of prior narcotics arrests; and (8) the overwhelming smell of air freshener.

"In determining whether reasonable suspicion exists, a court must consider 'the totality of the circumstances -- the whole picture.'" State v. Stovall, 170 N.J. 346, 361 (2002) (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)).  To appropriately view the "whole picture," the Court must not engage in a "divide-and-conquer" analysis by looking at each fact in isolation. District of Columbia v. Wesby, 583 U.S. ___, 138 S. Ct. 577, 588

15

(2018).  The reasonable suspicion inquiry also considers the officers' background and training, and permits them "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'"  United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting Cortez, 449 U.S. at 418).

Here, already informed by the tip from ATF, Detective Kazan was confronted with the "overwhelming odor of air freshener" emanating from Nelson's car which, coupled with the detective's observations, taking into account his training and experience, suggested criminal activity.  We find that these factors, in conjunction with the other observations Detective Kazan discussed in his testimony, provided the detective with the reasonable suspicion necessary to prolong Nelson's stop as they awaited the arrival of the canine unit.

## VI.

For the reasons stated herein, we affirm as modified the judgment of the Appellate Division.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA'S opinion.

16