**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0362-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CRISTINO SANTIAGO, a/k/a
CRISTINO SANTIAGO, III,
and CRISTINO A. SANTIAGO,

    Defendant-Appellant.

_____

Submitted September 29, 2022 – Decided October 5, 2022

Before Judges Gooden Brown and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 19-06-0325.

Joseph E. Krakora, Public Defender, attorney for appellant (Michael Denny, Assistant Deputy Public Defender, of counsel and on the brief).

Matthew J. Platkin, Acting Attorney General, attorney for respondent (Boris Moczula, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Cristino Santiago appeals from a November 12, 2020 conviction entered after a guilty plea for second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1). On appeal, defendant asserts that violations of the knock-and-announce rule requires the reversal of the trial court's December 19, 2019 denial of a motion to suppress physical evidence obtained by police during the execution of an arrest warrant. We affirm.

We discern the following facts from the record. On March 1, 2019, defendant was charged with animal cruelty and multiple weapons offenses for which a warrant was issued for his arrest. Following issuance of the warrant, Trenton Police Detective Tara Dzurkoc, who was assigned to the U.S. Marshals fugitive taskforce, opened a fugitive investigation into defendant's whereabouts. During her investigation, Dzurkoc utilized CLEAR, a public records database, which revealed that defendant was residing at the subject residence—an address on Chambers Street, Apartment 1 in Trenton—with his mother and girlfriend, co-defendant Ashley Cedeno.[1]

The Chambers Street residence is a two-family apartment building. There is an outside, common doorway that leads to the entrances for Apartments 1 and

_____

[1] Cedeno is not a party to this appeal.

A-0362-21

2. On the left side of the home, there is a concrete sidewalk that leads to the back yard. The back yard is enclosed by a four-foot-high plywood fence. The back door of Apartment 1 opens to a small concrete patio.

On March 11, 2019, prior to executing the warrant, Dzurkoc testified that she briefed the U.S. Marshals on the warrant, defendant's criminal history,[2] and disseminated a photo of defendant from his Facebook page. At approximately noon that same day, members of the U.S. Marshals taskforce established a perimeter around the outside of the residence.

In forming a perimeter, the taskforce was broken up into two teams. Dzurkoc, the case detective, assisted the front entry team, which included six or seven officers. New Jersey State Police Detective Anthony Pompeo was assigned to the rear team, which included two other officers.

Pompeo testified that, once his team reached the back gate, he encountered a barking pit bull. After entering the back yard, Pompeo set up in the center of the yard facing the rear of the home. He then observed defendant open the back door of the residence and step out onto the concrete patio. After the rear team announced themselves, defendant hastily retreated back inside the residence.

---

[2] Defendant has five prior convictions, including one for a weapons offense.

A-0362-21

Pompeo radioed to the front entry team to alert them that he saw defendant exit and then reenter the residence.

After receiving the alert that defendant had reentered the dwelling, the front entry team knocked and announced their presence on the outside, common door; entered into the hallway with both apartment doors; and, after receiving no response, forced entry into the door of Apartment 1 without knocking.[3] Upon entry, Dzurkoc observed a semi-automatic handgun in the living room by the couch.

Dzurkoc also heard running water coming from a bathroom adjoining the living room; the door was partially open. Upon opening the bathroom door, Dzurkoc observed Cedeno wrapped in a towel. Around the same time, Pompeo radioed Dzurkoc that defendant was arrested after running out the back door for a second time.

Dzurkoc testified that she then detained Cedeno while officers cleared the adjoining rooms; an infant was located asleep in a bedroom next to the bathroom. Cedeno requested permission to put on some clothing since she was

---

[3]  At the suppression hearing, Dzurkoc testified that the front entry team "rammed" the door to Apartment 1, however, she stated that she did not witness it occur.

A-0362-21

only in a towel. Dzurkoc testified that she escorted Cedeno to the bedroom, due to concerns for officers' safety.

Immediately upon entering the bedroom, Dzurkoc testified that she observed a handgun on a desk. The detective further testified that, while Cedeno was gathering clothes from a bin on the floor, she told the officers that she felt another gun in the bin. Dzurkoc told Cedeno to remove her hands and looked for herself; Dzurkoc saw a black M4-style rifle with a large capacity magazine in the bin.

A search warrant for the apartment was subsequently obtained and executed that same day. A search of the apartment's interior yielded a total of five guns and a large capacity magazine, marijuana, mail addressed to defendant at the Chambers Street address, and defendant's wallet.

On June 6, 2019, a Mercer County grand jury returned a six-count indictment,[4] charging defendant with: second-degree unlawful possession of a weapon, contrary to N.J.S.A. 2C:39-5(b)(1) (count one); second-degree possession of a firearm for an unlawful purpose, contrary to N.J.S.A. 2C:39-4(a) (count two); third-degree animal cruelty, contrary to N.J.S.A. 4:22-17(c)(1) and

---

[4] Mercer County Indictment No. 19-06-0325.

4:22-17(d)(1)(b) (count three); fourth-degree possession of a large capacity ammunition magazine, contrary to N.J.S.A. 2C:39-3(j) (count four); and second-degree possession of a weapon by certain persons not to have weapons, contrary to N.J.S.A. 2C:39-7(b)(1) (count six).

On September 27, 2019, defendant filed a motion to suppress the physical evidence that had been seized by police on March 11, 2019. At the hearing, defendant testified that he was not living at the Chambers Street apartment in March of 2019, but was living on Randall Avenue with Cedeno, her mother, and her brother. Defendant testified that he never entered the Chambers Street residence on March 11, 2019; rather, defendant testified that he was immediately arrested in the back yard of the residence when the officers arrived and subsequently escorted to the front of the house. Defendant testified that, when he reached the front of the house and was being placed in a police vehicle, he observed one of the officers go through the front door and wave the other officers to come inside.

Based on this version of events, defendant argued that the court should suppress all physical evidence recovered, because "the police lacked a basis to conduct a 'protective sweep' where [defendant] was arrested outside of the residence and there was no information that suggested a risk of violence was

A-0362-21

posed by anyone inside the residence." In addition, defense counsel submitted that "the evidence seized as a result of the search warrant is 'fruit of the poisonous tree' and should also be suppressed" because the affidavit for the search warrant was based on information gathered during the allegedly unconstitutional protective sweep. Pertinent to this appeal, on the motion to suppress, defendant did not argue that officers were required to knock on the wooden back gate and announce before entering the back yard, nor did he argue that the affidavit in support of the search warrant to search the residence was fruit of the poisonous tree emanating from the initial knock and announce violation.

On December 19, 2019, the judge denied defendant's motion in an order and oral opinion. The judge found the testimony of Pompeo and Dzurkoc credible while finding that defendant's testimony was not believable. In his oral opinion, the judge held that "the officers lawfully entered the residence to execute the arrest warrant of [defendant]" and observed the first handgun in plain view, which provided the basis for the officer to obtain a search warrant for the premises.

On September 10, 2020, defendant plead guilty to count one of the indictment, second-degree unlawful possession of a weapon, contrary to

 A-0362-21

N.J.S.A. 2C:39-5(b)(1). Defendant further agreed to forfeit the five firearms seized by police on March 11, 2019. On October 20, 2020, in accordance with the plea agreement, defendant was sentenced to a five-year prison term, with three and one-half years of parole ineligibility.

On appeal, defendant presents the following arguments for our consideration:

POINT I

THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS BECAUSE THE POLICE UNLAWFULLY ENTERED THE FENCED-IN BACKYARD OF THE DEFENDANT'S RESIDENCE AND BECAUSE THEY VIOLATED THE KNOCK-AND-ANNOUNCE RULE.

1. Because the police entered the private backyard without abiding by the knock-and-announce precautions and prior to knowing that Santiago was actually present in the house, their entry was unconstitutional, requiring suppression of all of the evidence.

2. Because the police failed to announce their purpose prior to entry, the knock-and-announce rule was violated, requiring suppression of the evidence.

The scope of our review of a decision on a motion to suppress is limited. State v. Ahmad, 246 N.J. 592, 609 (2021); State v. Nelson, 237 N.J. 540, 551 (2019). "Generally, on appellate review, a trial court's factual findings in

8

support of granting or denying a motion to suppress must be upheld when 'those findings are supported by sufficient credible evidence in the record.'" State v. A.M., 237 N.J. 384, 395 (2019) (quoting State v. S.S., 229 N.J. 360, 374 (2017)). We give deference to those factual findings in recognition of the trial court's "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007). We "ordinarily will not disturb the trial court's factual findings unless they are 'so clearly mistaken that the interests of justice demand intervention and correction.'" State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)). However, legal conclusions to be drawn from those facts are reviewed de novo. State v. Radel, 249 N.J. 469, 493 (2022); State v. Hubbard, 222 N.J. 249, 263 (2015).

"Appellate review is not limitless." State v. Robinson, 200 N.J. 1, 19 (2009). It is well established that we will not consider an argument which was not raised before the trial court. Selective Ins. Co. of Am. v. Rothman, 208 N.J. 580, 586 (2012). "[O]ur appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder

v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).

Where an issue was "never . . . raised before the trial court, . . . its factual antecedents" were "never . . . subjected to the rigors of an adversary hearing," and "its legal propriety" was "never . . . ruled on by the trial court, the issue was not properly preserved for appellate review." Robinson, 200 N.J. at 18-19. We have extended this procedural bar to constitutional issues not raised before the trial court. State v. Jenkins, 221 N.J. Super. 286, 292 (App. Div. 1987) ("It is now well established that constitutional claims, such as Fourth Amendment rights, may be waived unless properly and timely asserted."); see State v. Cox, 114 N.J. Super. 556, 559 (App. Div. 1971) ("R[ule] 3:5-7 is strictly adhered to . . . .").

With these guiding principles in mind, we decline to consider defendant's arguments because they were not preserved for our review. Defendant's knock-and-announce claims were not "properly presented to the trial court" and do not "go to the jurisdiction of the trial court or concern matters of great public interest." Robinson, 200 N.J. at 20. Defendant had an opportunity to present these claims at the December 10 and 17, 2019 suppression hearings, but failed to do so. Because our jurisdiction is rightly "bounded by the proofs and

10

objections critically explored on the record before the trial court," we must consider defendant's knock-and-announce claims waived.[5]

To the extent that we have not addressed defendant's remaining arguments, we find that they lack sufficient merit to warrant discussion in a written opinion.  Rule 2:11-3(e)(2).

Affirmed.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] On appeal, defendant did not pursue the arguments he made at the suppression hearing, the viability of which are dependent on a finding that defendant's version of the events was credible.  We deem those issues waived.  See Skl odowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived.").

A-0362-21