**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0878-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RASHAD A. JOHNSON,

     Defendant-Appellant.

_____

Submitted March 24, 2025 – Decided July 15, 2025

Before Judges Berdote Byrne and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 21-01-0069.

Ronald B. Thompson PC, attorney for appellant (Robert B. Thompson on the brief).

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Robert A. Polis II, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Rashad Johnson appeals from the denial of his motion to suppress evidence recovered following a traffic stop. He contends the police lacked lawful grounds to conduct a warrantless search of a duffle bag found inside his vehicle, from which they recovered a handgun he did not have a permit to possess. We disagree and affirm.

I.

We derive the pertinent facts from the pleadings, body-worn footage of the traffic stop, and transcript of the hearing on defendant's suppression motion. On March 3, 2020, using a radar light detection and ranging device, a sergeant from the Vineland Police Department observed a silver BMW traveling eastbound on West Butler Avenue at a speed exceeding the posted 35 mile-per-hour limit. He followed the BMW as it proceeded onto Southwest Boulevard, where he observed the vehicle pass another car on the right to execute a turn.

The sergeant initiated a traffic stop and approached the BMW from its passenger side. The driver, later identified as defendant, lowered the passenger-side window only partially and refused the officer's repeated requests for identification and vehicle registration. Defendant questioned the justification for the stop and refused to exit the vehicle when directed. Defendant also requested the presence of a supervising officer.

A-0878-23

The sergeant explained that he was the only traffic supervisor on duty at that time and moved to the driver's side of the vehicle, where again defendant lowered the window only partway. The sergeant informed defendant that he had been stopped for speeding, specifically for traveling 50 miles per hour in a 35 mile-per-hour zone. Defendant disputed the allegation he had been speeding. After the sergeant instructed defendant several additional times to provide his driving credentials and step out of the vehicle, defendant opened his wallet to retrieve them, exposing what the sergeant described as a "stack of cash." Defendant then exited the vehicle. On exiting, the sergeant observed defendant immediately turn and lock the driver's side door using a key. The sergeant testified that "through [his] training," he grew suspicious defendant's argumentative "demeanor, him locking the car, him pulling out this wad of money . . . shutting the door behind, locking the door," was "indicative of drug transactions."

At the sergeant's request, a second officer arrived on scene to remain with defendant while the sergeant conducted a warrant check and requested a K-9 unit. A K-9 Officer responded with a canine who was deployed to conduct a sniff of the vehicle. The canine provided a positive indication for the presence of narcotics. Subsequently, the sergeant and officer searched the vehicle and

3

discovered a loaded revolver in a gym bag located on the passenger side floorboard. Defendant was then placed under arrest, issued a ticket for speeding, and charged with unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1). In January 2021, a Cumberland County grand jury returned an indictment charging defendant with one count of unlawful possession of a weapon, second degree.

Motion to Suppress

The court held a testimonial hearing on September 27, 2021. The foregoing facts were elicited through questioning of the three officers. Concerning the absence of narcotics found during the search, the K-9 Officer explained that the canine may have alerted to residual odors of narcotics, possibly due to defendant's statement that a passenger may have previously smoked marijuana in the vehicle.[1] The K-9 officer testified that the canine had no prior history of false alerts.

---

[1] We note that since promulgation of the decriminalization of marijuana under CREAMMA, the odor of cannabis does not constitute probable cause for search of an automobile. N.J.S.A. 24:61-31 to -56. See also, State v. Cohen, 254 N.J. 308 (2023). Here, it was not determined at the hearing which narcotic(s) triggered the K-9 alert, consisting in this case of a scratch and bark at the front driver-side door, according to the K-9 officer. As he testified, the canine was trained to recognize seven types of narcotics: "crack, cocaine, heroin, hashish, marijuana, [L]SD and ecstasy."

A-0878-23

Based on the evidence presented, the court found that the duration of the stop—between when the K-9 unit was called and the unit's arrival on scene—was approximately ten to twelve minutes. The court further determined that the positive canine alert provided probable cause for the warrantless search of defendant's vehicle. Defendant's motion to suppress the firearm recovered during the stop was denied. The trial court reasoned that

> [g]iven the fact that there was no unreasonable delay in bringing the K-9 out . . . I don't find that the stop was unreasonably prolonged. Given the fact that the K-9 going around the car doesn't implicate privacy concerns. And given the circumstances, therefore, the motion to suppress is denied because the police had probable cause to search the car.

In January 2023, the State moved for a waiver of the mandatory minimum sentence under the Graves Act, N.J.S.A. 2C:43-6.2. The court granted the motion and in November 2023, sentenced defendant to a term of three years' incarceration with a one-year period of parole ineligibility. Defendant timely filed a notice of appeal.

In self-represented capacity, defendant advances a single argument for our consideration:

POINT I

THE STATE'S WARRANTLESS DETENTION AND SEARCH OF RASHAD JOHNSON'S VEHICLE WAS

IN VIOLATION OF THE FOURTH AMDENDMENT AND ARTICLE 1, PARAGRAPH 7 OF THE CONSTITUTION OF THE STATE OF NEW JERSEY.

## II.

A traffic stop is lawful when based on a reasonable and articulable suspicion that a traffic or other offense has been committed, and the State has the burden to prove by a preponderance of the evidence that such suspicion was present. State v. Amelio, 197 N.J. 207, 211 (2008); see also Delaware v. Prouse, 440 U.S. 648, 663 (1979) (recognizing the constitutional propriety of warrantless traffic stops if based upon articulable police suspicions of illegality); State v. Bernokeits, 423 N.J. Super. 365, 370 (App. Div. 2011) (stating a "motor vehicular violation, no matter how minor, justifies a stop without any reasonable suspicion that the motorist has committed a crime or other unlawful act").

To determine whether reasonable suspicion existed, a court must consider the totality of the circumstances, viewing the "whole picture" rather than taking each fact in isolation. State v. Nelson, 237 N.J. 540, 554-55 (2019) (quoting State v. Stovall, 170 N.J. 346, 361 (2002)). This analysis may also consider police officers' "background and training," including their ability to "make inferences from and deductions about the cumulative information available to

A-0878-23

them that might well elude an untrained person." Id. at 555 (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)).

"Constitutional precedent requires only reasonableness on the part of the police, not legal perfection. Therefore, the State need prove only that the police lawfully stopped the car, not that it could convict the driver of the motor-vehicle offense." State v. Williamson, 138 N.J. 302, 304 (1994); see also State v. Sutherland, 231 N.J. 429, 439 (2011). However, our federal and state constitutions do not allow motor vehicle stops to be unduly prolonged. State v. Williams, 254 N.J. 8, 41 (2023) (citing Rodriguez v. United States, 575 U.S. 348, 350-51 (2015)); State v. Dunbar, 229 N.J. 521, 540 (2017).

Furthermore, a warrantless search of an automobile is permitted only when the police have "probable cause to believe the vehicle contains contraband or other evidence of unlawful activity [that] arose spontaneously and unforeseeably." State v. Courtney, 478 N.J. Super. 81, 93 (2024) (citing State v. Witt, 223 N.J. 409, 446-48 (2015)).

In evaluating a trial judge's ruling on a suppression motion, we afford considerable deference to the judge's role as a fact-finder. Our review of the judge's factual findings is "exceedingly narrow." State v. Locurto, 157 N.J. 463, 470 (1999). We must defer to those factual findings "so long as those findings

are supported by sufficient evidence in the record." State v. Hubbard, 222 N.J. 249, 262 (2015) (internal citations omitted); see also Nelson, 237 N.J. at 551. As part of that deference, we particularly must respect the trial judge's assessments of credibility, given the judge's ability to have made "observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record." Locurto, 157 N.J. at 474 (internal citations omitted).

Defendant contends State v. Smart, 473 N.J. Super. 87 (App. Div. 2022) is controlling and compels a ruling in his favor. We disagree. In Smart, police stopped defendant's vehicle after first receiving information from a confidential informant and conducting over an hour of surveillance, during which they learned that the front seat passenger was involved in illegal narcotics activity. Id. at 92. They stopped the vehicle without the driver having committed a driving violation. Id. at 93. After stopping the vehicle, to further their investigation, the police found no evidence of drug activity in plain view. Nonetheless, the police called in a K-9 unit. Ibid.

> "[E]veryone waited twenty-five minutes" for the K-9 unit to arrive, alert to the presence of drugs, and establish probable cause, the judge elaborated:
> The investigatory stop was based on an hour-and-twenty-minute surveillance of the defendant that was initiated by a CI's tip. Stopping defendant's car was not

8

> based on some traffic violation which . . . then led to probable cause to conduct a warrantless search. The surveillance, car stop, and K-9 sniff were based solely on the officers' belief that defendant had drugs in the vehicle.
>
> [Id. at 94 (emphasis added).]

We held Smart's Fourth Amendment rights were violated by a warrantless search of his vehicle because, while police had reasonable and articulable suspicion to pull over the vehicle, probable cause did not arise until a canine sniff alerted for the presence of narcotics. Id. at 100-01.

By contrast, here, police conducted a lawful stop of defendant's vehicle to issue a traffic summons for speeding. As the trial court put it, "Well, you would agree with me on this. After what we've seen, had [Johnson] simply had license, registration, and insurance and handed it to [the sergeant], he would have gotten ticketed and sent on his way." Defense counsel responded, "No doubt, Judge."

Instead, after witnessing defendant repeatedly refuse to provide his identification, eventually pulling out a wallet containing a large sum of cash and exiting the vehicle to lock the door behind him, the sergeant developed reasonable articulable suspicion of illegal narcotic activity, summoning the K-9 unit. Unlike the scenario in Smart, the sergeant's suspicion arose unforeseeably, as required under Witt, 223 N.J. at 450.

Defendant asserts:

> At the moment the officer summoned a canine to his location, the officer did not have probable cause to justify further detention. Thus, [defendant]'s detention and subsequent warrantless search of his vehicle . . . clearly violated the Fourth Amendment and Article 1, Paragraph 7 of the Constitution of the State of New Jersey.

Indeed, we agree the sergeant did not have probable cause to search the vehicle when he summoned the K-9 unit. Under our law, probable cause is not required for police to conduct a K-9 sniff procedure. As our Supreme Court held in Dunbar, "an officer does not need reasonable suspicion independent from the justification for a traffic stop in order to conduct a canine sniff." 229 N.J. at 540. The Dunbar Court emphasized that "an officer may not conduct a canine sniff in a manner that prolongs a traffic stop beyond the time required to complete the stop's mission, unless he possesses reasonable and articulable suspicion to do so." Ibid.

The totality of the circumstances in this case demonstrate that, separate from the original reason for the traffic stop, the police possessed reasonable, articulable suspicion that defendant possessed narcotics. Notwithstanding the additional time permitted by emergence of a separate basis for suspicion, the trial court found the duration of the stop was not unduly prolonged. During that

10

time, the record reflects the sergeant was "running a warrant check," and "looking up the subject for any other calls for service and writing out tickets for the infractions."

In sum, the police were justified in making the initial stop, and during its course, spontaneously developed a reasonable and articulable suspicion of independent narcotic activity, and were therefore authorized to call a K-9 unit. The K-9 unit arrived without undue delay, and its alert supplied probable cause for a warrantless search of the duffel bag, which produced the handgun underlying defendant's guilty plea and sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

11